The STATE of Ohio, Appellee,

v.

BAUGHMAN, Appellant.

[Cite as *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2010–08–069 and CA2010–08–070.

Jan. 18, 2011.

47

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellant.

Rittgers & Rittgers and Nicholas D. Graman, for appellee.

HENDRICKSON, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals a decision of the Warren County Court of Common Pleas suppressing evidence on behalf of defendant-appellee, Shawna J. Baughman. For the reasons outlined below, we reverse the decision of the trial court and remand.

{¶ 2} On April 28, 2010, Officer Heath Martin of the Springboro Police Department received a 9-1-1 dispatch regarding a possibly intoxicated driver heading toward Springboro. A man who identified himself as "John Simpson" called 9-1-1 and reported seeing a small, red car driving erratically in the vicinity of State Route 741. The informant provided the license plate number of the vehicle and suggested that the driver might be diabetic or intoxicated.

{¶ 3} Using the details provided by the informant, Officer Martin located a red Pontiac traveling on SR 741. The license-plate number of the vehicle matched the number provided by the informant. Martin followed the vehicle for a block or so, then initiated a traffic stop without having observed any traffic violations. The officer stopped the vehicle solely on the basis of "John Simpson's" tip.

{¶ 4} Martin approached the vehicle and identified the driver as Shawna Baughman. He detected a strong odor of an alcoholic beverage about her person and observed that her eyes were watery, glassy, and bloodshot. Shawna admitted to consuming one beer. The officer asked her to exit the vehicle to perform field sobriety tests. Shawna indicated that she was a registered nurse and knew she that would not pass the tests.

{¶ 5} Martin first administered the horizontal-gaze nystagmus test, observing six clues. His attempt to administer the walk-and-turn test was halted at Shawna's request. She stated that she could not perform the test.

{¶ 6} Shawna was placed under arrest and transported to the Springboro police station where she submitted to a blood-alcohol content ("BAC") test. At the station, she admitted to consuming eight to ten beers in a four-hour period. Shawna confessed that she had received a call from her estranged husband, Frank, who was intoxicated. He was angry that she was going to pursue child-support payments. Shawna decided to pick up the couple's six-year-old twin girls, who were with Frank at the time.

{¶ 7} Unbeknownst to Officer Martin at the time of the arrest, the tipster who identified himself as "John Simpson" was actually Shawna's husband, Frank Baughman. According to Frank, he did not provide his real name to the 9–1–1 dispatcher because he did not want Shawna to know he was the tipster due to their impending divorce. Frank claimed that when Shawna retrieved the children, he saw her "stumble a little bit" as she opened her car door. He also indicated that he "thought he smelled something" about Shawna's person. At the suppression hearing, Frank admitted that he phoned 9–1–1 partly because he was angry with Shawna following the custody exchange. He did not actually observe her driving erratically or crossing the double line as he had told the 9–1–1 dispatcher.

{¶ 8} Shawna was charged with two counts of operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A) and two counts of child endangering in violation of R.C. 2919.22(C)(1). Both offenses are first-degree misdemeanors. Shawna subsequently filed a motion to suppress. Following a hearing, the trial court granted the motion. The court reasoned that Frank's tip was not reliable and that there was no independent observation of Shawna's impairment by Officer Martin, rendering the stop invalid. Consequently, the court excluded all evidence connected to the stop including the officer's observa-

tions subsequent to the stop, the results of the field sobriety tests, and the results of the BAC test. Consistent with these rulings, the court determined that there was no basis for the initial stop and no probable cause for the arrest.

{¶ 9} The state timely appeals, raising one assignment of error.

## Assignment of Error No. 1

{¶ 10} "The Warren County Court erred when it granted the appellee's motion to suppress."

{¶ 11} In its sole assignment of error, the state challenges the trial court's decision granting the motion to suppress on the basis that Officer Martin reasonably relied on what appeared to be an identified-citizen-informant tip relayed by the 9–1–1 dispatcher in stopping Shawna's vehicle. The state insists that suppression of the evidence under those circumstances did nothing to further the purpose of the exclusionary rule, which is to deter willful police misconduct.

{¶ 12} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. The trial court, as the trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Baker*, Warren App. No. CA2009–06–079, 2010-Ohio-1289, 2010 WL 1177340, ¶ 28. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id. In accordance with this standard, we are authorized to review any questions of law presented by the instant case de novo. *State v. Fille*, Clermont App. No. CA2001–08–066, 2002-Ohio-3879, 2002 WL 1310371, ¶ 16.

{¶ 13} We have reviewed the record and believe the trial court's findings of fact to be supported by competent, credible evidence. See *Baker* at ¶ 28. The resolution of this appeal thus turns on whether the trial court applied the appropriate legal standard, a determination that does not obligate us to defer to the trial court's legal conclusions. See id. A survey of the applicable law is therefore in order.

{¶ 14} The Fourth Amendment to the United States Constitution insulates individuals from unreasonable searches and seizures. *United States v. Hensley* (1985), 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604. There are two types of traffic stops, each requiring a different constitutional standard. *State v. Moeller* (Oct. 23, 2000), Butler App. No. CA99–07–128, 2000 WL 1577287, at 4. One is a typical noninvestigatory stop when an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. *Whren v. United States* (1996),

517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89. In the instant case, it is undisputed that Officer Martin did not observe any traffic infractions prior to initiating the stop.

{¶ 15} The second type of stop is an investigative or *"Terry"* stop, which occurs when an officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. While the concept of "reasonable and articulable suspicion" has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. Id. at 20–21. This obscure concept requires that an investigative stop be viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, paragraph two of the syllabus; *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, quoting *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859. It is through this lens that we scrutinize the stop in the present matter.

{¶ 16} In order to determine whether or not Officer Martin had a reasonable and articulable suspicion justifying the stop of Shawna's vehicle, it is necessary to examine the impetus behind the stop. Martin conceded at the suppression hearing that he stopped Shawna's vehicle solely on the basis of "John Simpson's" tip. The Ohio Supreme Court has acknowledged that a tip called in by an informant can serve as the sole basis for an investigative stop if the tip has sufficient indicia of reliability. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 296, 720 N.E.2d 507. In order to assess the value of an informant's tip, a court must consider the informant's veracity, reliability, and basis of knowledge. Id. at 299.

{¶ 17} The category into which an informant is classified is relevant to determining his veracity, reliability, and basis of knowledge. Id. at 300. Ohio courts have recognized three basic types of informants: (1) the anonymous informant, (2) the identified-citizen informant, and (3) the known informant (an actor in the criminal world who has previously provided reliable tips to law-enforcement authorities).[1] Id.

{¶ 18} Courts generally agree that a tip offered by an identified-citizen informant based on personal observations is highly credible, rendering it sufficient to withstand scrutiny without independent police corroboration. *State v. Abercrombie*, Clermont App. No. CA2001–06–057, 2002-Ohio-2414, 2002 WL

---

1. There is no indication in the record that Frank is a known informant.

1009316, ¶ 16. "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability— we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates* (1983), 462 U.S. 213, 233–234, 103 S.Ct. 2317, 76 L.Ed.2d 527. See also *Abercrombie* at ¶ 15. By contrast, a tip provided by an anonymous informant is typically considered less reliable and generally requires independent police corroboration. *Weisner*, 87 Ohio St.3d at 300, 720 N.E.2d 507, citing *Alabama v. White* (1990), 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

{¶ 19} So which type of informant was Frank Baughman? The trial court found that the "John Simpson" tip was not credible, ruling that it did not qualify as an identified-citizen informant tip nor even a valid anonymous tip. Indeed, some of the information provided by Frank to the 9-1-1 dispatcher was false. The vehicle identification information and the direction in which it was traveling were accurate. Frank's "John Simpson" alias, his claim that he had observed the vehicle driving erratically and crossing the double yellow line, and his posturing that perhaps the driver was diabetic, however, were all false assertions.[2] Frank also claimed that he called 9-1-1 out of concern for his children, but this altruistic motive appears dubious in view of the fact that he is the one who placed the children in the car with his wife.

{¶ 20} In view of these falsities, it is not surprising that the trial court found Frank to be an unreliable informant. But was "John Simpson's" unreliability evident from the perspective of an objectively reasonable police officer on the scene guided by his experience and training and reacting to circumstances as they unfolded? *Bobo*, 37 Ohio St.3d at 179, 524 N.E.2d 489. We think not, and we find the trial court's failure to view the case from this perspective to be an improper application of the law.

{¶ 21} Despite the fact that the tip was riddled with falsities, "John Simpson," by all indications, appeared to be an identified-citizen informant to Officer Martin. "John Simpson" provided a name and a contact number, the existence of which Martin confirmed with the 9-1-1 dispatcher before stopping Shawna's vehicle. "John Simpson" described the vehicle and provided its exact license-plate number, as well as the road on which it was traveling and the direction in which it was headed. Martin located the vehicle based upon these details.

{¶ 22} When objectively viewing the circumstances, Martin had no reason to doubt the reliability of the tip when he initiated the traffic stop. On its face, the "John Simpson" tip qualified as an identified-citizen-informant tip. There was absolutely no indication that the tip was based on rumor or speculation; to the

---

2. The record does not indicate whether the cell phone number provided by Frank was accurate.

contrary, it was purportedly based on direct observation. *Abercrombie*, 2002-Ohio-2414, 2002 WL 1009316, at ¶ 15. Martin rationally relied on the tip, giving rise to a reasonable and articulable suspicion sufficient to justify initiating the stop. Accordingly, the stop did not violate Shawna's right to be free from unreasonable searches and seizures under the Fourth Amendment.[3]

{¶ 23} We conclude that the trial court applied the wrong legal standard in determining that the tip from "John Simpson" did not qualify as an identified-citizen-informant tip. *Baker*, 2010-Ohio-1289, 2010 WL 1177340, at 28.

{¶ 24} Admittedly, the facts of this case are worrisome. We do not wish to encourage private citizens to fabricate tips of criminal activity in furtherance of some petty grudge or ill will. Presumably, such citizens will be deterred by the possibility of criminal prosecution. *Gates*, 462 U.S. at 233–234, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶ 25} Generally, evidence that is gathered in violation of a defendant's constitutional rights must be excluded. *State v. King*, Butler App. No. CA2008–03–085, 2008-Ohio-5840, 2008 WL 4839662, ¶ 10. Even if the evidence in the case at bar was gathered in violation of Shawna's Fourth Amendment rights, exclusion of the evidence was not automatically warranted. *Gates* at 223. "[T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans* (1995), 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34. When evidence was obtained in violation of the defendant's Fourth Amendment rights, whether to apply the remedy afforded by the exclusionary rule has long been regarded as a separate inquiry. *Gates* at 223.

{¶ 26} The propriety of applying the exclusionary rule turns on the culpability of the police and the potential for exclusion to deter wrongful police conduct. *Herring v. United States* (2009), 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496. Upon analyzing these two objectives, we find that the application of the exclusionary rule is inappropriate in this case.

{¶ 27} Regarding the culpability of Officer Martin, Shawna asserts that he could not reasonably rely on the "John Simpson" tip because it was based on a fraudulent 9–1–1 call. Shawna insists that a rational officer would have corrobo-

---

3. Shawna cites this court's decision in *State v. Handley* (Feb. 1, 1999), Clermont App. No. CA98–04–028, 1999 WL 55682, for the proposition that simple police corroboration of neutral details supplied by an informant is insufficient to create a reasonable and articulable suspicion to justify a traffic stop. However, the analysis in *Handley* applied the law pertaining to anonymous tips. Such tips require independent corroboration because they lack the heightened credibility afforded to identified-citizen-informant tips. Due to our conclusion that the tip in the case at bar qualified as an identified-citizen-informant tip, *Handley* is inapplicable to the present matter.

rated the detail in the call and conducted an independent police investigation to attain a reasonable and articulable suspicion to justify the stop.

{¶ 28} Under the facts and circumstances of the case, there is nothing blameworthy in Martin's reliance upon what appeared to be a valid identified-citizen-informant tip. Shawna offered no evidence to support that the officer acted in a dishonest manner when he initiated the stop based upon the tip. To the contrary, the officer confirmed the color and type of vehicle, the license plate number, and the vehicle's location before initiating the stop. He also verified the type of informant involved, that is, an identified citizen, prior to initiating the stop. In the short amount of time Martin had to intercept a possibly intoxicated or diabetic driver, he acted prudently to locate the correct vehicle using the information provided by the informant. The officer did not deliberately disregard Shawna's Fourth Amendment rights, nor can we say that his conduct rises to the level of recklessness or gross negligence based upon the totality of the circumstances. *Herring*, 555 U.S. at ——, 129 S.Ct. at 702, 172 L.Ed.2d 496.

{¶ 29} Regarding the potential for exclusion of the evidence to deter wrongful police conduct, we note that this factor embodies a historical purpose of the exclusionary rule. *United States v. Leon* (1984), 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677. " '[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule." *Herring*, 555 U.S. at ——, 129 S.Ct. at 701, 172 L.Ed.2d 496, quoting *Leon* at 911. The United States Supreme Court ruled that evidence should be suppressed only if the police officer had knowledge that the search was constitutionally invalid. *Illinois v. Krull* (1987), 480 U.S. 340, 348–349, 107 S.Ct. 1160, 94 L.Ed.2d 364, quoting *United States v. Peltier* (1975), 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374. Although this sounds like an inquiry into the officer's subjective intent, it is actually an objective inquiry focusing on "whether a reasonably well trained officer would have known that the search was illegal * * * [in view of] all of the circumstances." *Leon* at 922, fn. 23.

{¶ 30} In view of the surrounding circumstances in this case, there is no indication that a reasonably well-trained officer would have believed that the traffic stop amounted to an illegal search or seizure. Id. Notably, the misconduct here was actually perpetrated by Frank Baughman, a private citizen. The exclusionary rule was not designed to exclude evidence of misconduct by an actor outside of law enforcement. Cf. *Evans*, 514 U.S. at 15, 115 S.Ct. 1185, 131 L.Ed.2d 34 (declining to apply the rule to clerical errors by court employees).

{¶ 31} Moreover, exclusion of the evidence in this case based upon Frank's lies " 'will not further the ends of the exclusionary rule in any appreciable way; for * * * [the officer was] acting as a reasonable officer would and should act in

similar circumstances. Excluding the evidence can in no way affect [the officer's] future conduct unless it is to make him less willing to do his duty.'" *Leon,* 468 U.S. at 919–920, 104 S.Ct. 3405, 82 L.Ed.2d 677, quoting *Stone v. Powell* (1976), 428 U.S. 465, 539–540, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (White, J., dissenting).

{¶ 32} In sum, even if the evidence of OVI gathered by Officer Martin was obtained in violation of Shawna's Fourth Amendment rights, exclusion of the evidence was inappropriate under the facts of this case. *Gates,* 462 U.S. at 223, 103 S.Ct. 2317, 76 L.Ed.2d 527. When an officer reasonably relies upon what he believes to be a valid identified-citizen-informant tip, the act of barring the evidence does not serve the purposes of the exclusionary rule and is inappropriate. *Herring,* 555 U.S. at ——, 129 S.Ct. at 698, 172 L.Ed.2d 496.

{¶ 33} The state's single assignment of error is sustained.

{¶ 34} The judgment of the trial court is reversed, and this matter is remanded for further proceedings according to law and consistent with this opinion.

Judgment reversed
and cause remanded.

POWELL, P.J., and RINGLAND, J., concur.

