[Cite as *State v. Gaffney*, 2018-Ohio-4094.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| BRANDON V. GAFFNEY, | : | Case No. 18 CA 4 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Guernsey County
                                  Court of Common Pleas, Case No.
                                  17-CR-24



JUDGMENT:                         Reversed and Remanded



DATE OF JUDGMENT:                 October 9, 2018



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JASON R. FARLEY                           PHILIP J. KOREY
Assistant Guernsey County                 700 W. St. Clair Ave., Suite 400
Prosecuting Attorney                      Cleveland, Ohio 44113
627 Wheeling Ave
Cambridge, Ohio 43725

*Baldwin, J.*

{¶1}   Defendant-appellant Brandon V. Gaffney appeals his conviction and sentence. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On May 31, 2017, the Guernsey County Grand Jury indicted appellant on one count of possession of heroin in violation of R.C. 2925.11(C)(6)(d), a felony of the second degree, and one count of trafficking in heroin in violation of R.C. 2925.03(C)(6)(e), also a felony of the second degree. At his arraignment on June 22, 2017, appellant entered a plea of not guilty to the charges.

{¶3}   Thereafter, on August 30, 2017, appellant filed a Motion to Suppress Tangible Evidence. Appellee filed a memorandum contra to the motion on September 14, 2017 and appellant filed a supplement to the motion on November 15, 2017.

{¶4}   A hearing on the motion was held on November 17, 2017. At the hearing, Ohio State Highway Patrol Trooper Scott Bayless testified that he was on patrol in uniform in a marked cruiser and on duty on January 23, 2017. He testified that he was stationary in the marked crossover at Milepost 50 of Interstate 77 when he saw appellant's vehicle pass him. Trooper Bayless testified as follows when asked how he came into contact with appellant:

{¶5}   A:   I was stationary in the crossover about the 50 mile marker on 77 watching southbound traffic, and I observed his vehicle go by me southbound.  And what caught my attention as he approached and went by me, I couldn't really see anything but arms, so he was rigid in the seat.

{¶6}    As I pulled out and caught up to him, there wasn't any movement.  He was just staring straight ahead.  It was very rigid and non-relaxed that you would normally see

in a person that's just driving.  And I initially - - or I eventually made a traffic stop for a following too close violation.

{¶7}    Q:   Okay.   Where you were stationary at mile post 51, is that here in Guernsey County, Ohio?

{¶8}    A:  Yes, it is.

{¶9}    Q:  Okay.  And all of the events that you had testified to now and will testify today, that all occurred in Guernsey County, correct?

{¶10} A:  Yes.

{¶11} Q. Okay. So what first drew you attention to Mr. Gaffney was the fact that he was sitting rigid in his seat and staring straight ahead?

{¶12}  A. Correct

{¶13} Q:  You also then put your arms out straight ahead of you sort of - - and then you had them almost like you had them on a steering wheel?

MR KOREY:  That's a little leading, Your Honor.

THE COURT:  It is.  Objection sustained.  You can rephrase your question.

MS. ANGLER:  Thank you, Your Honor.

{¶14} Q:  How would you describe Mr. Gaffney's hand posture?

{¶15} A:  Pushed out and his body was locked to the rear.

{¶16} Transcript of suppression hearing at 11-12. He agreed that what first drew his attention to appellant was the fact that appellant was sitting rigid in his seat and staring straight ahead.

{¶17} Trooper Bayless then followed appellant's vehicle. He testified that he observed appellant's vehicle follow a semi-trailer with less than two seconds of gap between the semi and appellant's vehicle  while both vehicles were traveling at 70 miles

per hour. At approximately 2:47 p.m., The Trooper initiated a traffic stop of appellant's vehicle, which was a rental vehicle, for following too closely. Appellant, according to Trooper Bayless, did not make eye contact with him and gave vague answers. Appellant told the Trooper that he was coming from Cleveland and going to Bellaire.  He testified that he "thought it was odd if you're going to Cleveland from Bellaire, and you had family there or a house there, that you're in a rental car, That obviously didn't – it didn't compute to me to be accurate, From prior activities also, we have established that that is a source where—from Cleveland to the river area there for narcotics trafficking." Transcript of suppression hearing at 16. Appellant was not the person who had rented the vehicle. Trooper Bayless testified that appellant told him that he lived in Bellaire and had a house there, but that his driver's license was in Cleveland which concerned him.

{¶18} Trooper Bayless ran a criminal history and LEADS report on appellant and also checked with a task force detective in the Bellaire area to ask if he was familiar with appellant. The detective indicated that he was and that appellant had a criminal history involving narcotics.  Trooper Bayless received a response back from dispatch at 2:54 p.m. When Ohio State Highway Patrol Trooper Roe arrived, Trooper Bayless had appellant exit his vehicle and patted him down for weapons. While appellant was seated in the back of the police cruiser, Trooper Bayless deployed his canine for an exterior sniff of the vehicle. The canine indicated to an odor of narcotics on the driver's side and the passenger's side of the vehicle.  The canine sniff was done by 2:57 p.m.  The vehicle was then searched by Trooper Roe who found narcotics in the vehicle.  Trooper Bayless testified that approximately one ounce of heroin was located in a lint roller in the center console of the vehicle.

{¶19} On cross-examination, Trooper Bayless agreed that it was not against the law for a person to look straight ahead while driving on the highway. He further agreed that he had not witnessed appellant commit any traffic violations when appellant drove by him. When asked if it appeared that appellant was giving full time and attention to the road, Trooper Bayless testified that appellant "appeared to be." Transcript of suppression hearing at 36.

{¶20} Trooper Bayless further testified on cross-examination that prior to observing appellant, he had not received any complaints about him. He further testified that as he was following appellant, appellant was not weaving or speeding, did not go off the edge line of the road, and did not cross over into the left-hand lane erratically. Nor did appellant indicate any signs of impaired driving. He further agreed that up until the time where appellant approached the semi, he did not commit any traffic violations.

{¶21} Trooper Bayless testified that appellant immediately pulled over to the right hand side of the road when the Trooper activated his flashers and stopped his vehicle in such a way as not to impede traffic. He did not smell any marijuana, alcohol or air fresheners when he approached appellant's vehicle. He testified that he felt it was suspicious that appellant spoke in a low voice and testified that, when asked, appellant provided him with his driver's license and the rental agreement for the vehicle. The vehicle was rented by Caprita Bell but appellant was listed as another authorized driver. Appellant had a valid driver's license and there were not any warrants out for him. Trooper Bayless never cited appellant for following too closely.

{¶22} On cross-examination, Trooper Bayless testified that he believed that appellant said he had a daughter in Bellaire and that it was not unusual for a person living

in Cleveland to travel to Bellaire to visit a child. The following is an excerpt from his testimony at the hearing:

{¶23} Q: Now, on the video you approached Mr. Gaffney from the passenger side, and you take the rental agreement back, and you see that he's a licensed driver, correct?

{¶24} A: I did.

{¶25} Q: I'm sorry?

{¶26} A: I did.

{¶27} Q: Okay. You check with dispatch, and all this checks out. Now, you didn't write any citation, right?

{¶28} A: I did not.

{¶29} Transcript of suppression hearing at 50-51. Trooper Bayless testified that when appellant got out of his vehicle, he made eye contact with the Trooper and that appellant was cooperative after being pulled over. He further testified that appellant was not shaking and his hands were not moving erratically about. Trooper Bayless admitted that, under Ohio law, you cannot take a person into custody for a minor misdemeanor such as following too closely. He testified that he did not take appellant into custody for that, but had appellant placed in the back of his patrol car "for the investigative detention that I based on reasonable articulable suspicion that there was criminal activity, and I was going to investigate it." Transcript of suppression hearing at 55- 56.

{¶30} On redirect, Trooper Bayless testified that the rental agreement provided that the vehicle was to be returned on January 6, 2017 while the stop occurred on January 23, 2017. On recross-examination, he testified that he did not observe appellant exhibit

any furtive gestures.  He further testified that it would take approximately 15 minutes for him to write up a traffic citation.

{¶31}  The trial court, as memorialized in a Judgment Entry filed on November 22, 2017, denied the Motion to Suppress.  The matter then proceeded to a jury trial. At the outset of the trial, appellee dismissed the trafficking charge. The jury, on January 24, 2018, found appellant guilty of possession of heroin. Pursuant to a Judgment Entry filed on February 1, 2018, appellant was sentenced to four (4) years in prison.

{¶32}  Appellant now raises the following assignments of error on appeal:

{¶33}  "I.   WHETHER THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS EVIDENCE AND FINDING THAT THE OHIO PATROL OFFICER HAD A REASONABLE BASIS TO STOP APPELLANT'S MOTOR VEHICLE WHERE THE FINDINGS OF FACT WERE NOT SUPPORTED BY THE EVIDENCE; ALTERNATIVELY, THE TRIAL COURT ERRED IN UPHOLDING THE SEARCH OF APPELLANT'S VEHICLE, WHERE HE WAS AN AUTHORIZED DRIVER OF A RENTAL CAR, WHERE THE TROOPER STOPPED THE VEHICLE FOR FOLLOWING TOO CLOSELY TO A SEMI TRUCK, AND THEN PROCEEDED TO EXPAND THE STOP INTO AN ILLEGAL, INVESTIGATIVE DETENTION WHERE THE DEFENDANT COMMITTED NO OTHER TRAFFIC VIOLATIONS, WAS A LICENSED DRIVER, SHOWED NO SIGNS OF IMPAIRMENT, WAS TRAVELING FROM CLEVELAND TO BELLAIRE, WHERE THE TROOPER CLAIMED APPELLANT EXHIBITED SIGNS OF CRIMINAL BEHAVIOR WHILE DRIVING BY STARING STRAIGHT AHEAD WITH ARMS OUTSTRETCHED, AND BOTH HANDS ON THE WHEEL, INITIALLY SPOKE IN A LOW VOICE WITHOUT EYE CONTACT WHEN STOPPED BY THE TROOPER, AND WHERE DISPATCH RELATED TO THE TROOPER THAT APPELLANT HAD A PRIOR,

UNDATED CRIMINAL CONVICTION, AND WHERE THE TROOPER NEVER STARTED OR COMPLETED THE WRITING OF A TRAFFIC VIOLATION BUT INSTEAD ORDERED APPELLANT OUT OF HIS VEHICLE, PATTED HIM DOWN, FOUND NO CONTRABAND, AND THEN PLACED THE APPELLANT IN THE BACK OF HIS PATROL CAR WITH NO EXIT, AND THEN PROCEEDED TO RUN A DRUG DOG AROUND THE VEHICLE, AND AFTER AN ALERT, PROCEEDED TO SEARCH APPELLANT'S VEHICLE, ALL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION

{¶34} "II. WHETHER THE ACCUMULATION OF THE TRIAL COURT'S EVIDENTIARY ERRORS DEPRIVED THE APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

I

{¶35} Appellant, in his first assignment of error, argues that the trial court erred in denying his Motion to Suppress. We agree.

{¶36} There are three methods of challenging a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial

court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist. 1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist. 1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶37}** Appellant initially contends that the traffic stop was not valid. The Supreme Court of Ohio has observed, " '[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.' " *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 850 N.E.2d 698, 2006–Ohio–3563, ¶ 13, *quoting Gaddis ex rel. Gaddis v. Redford Twp.*, 188 F.Supp.2d 762, 767(E.D.Mich.2002). There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it. In *State v. Moller,* the Court of Appeals observed**:**

First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry* " stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *See Terry v. Ohio* (1968), 392 U .S. 1, 21, 88 S.Ct. 1868, 1879-1880. A non-investigatory traffic stop must be supported by probable cause, which arises when the stopping officer witnesses the traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287(Oct. 23, 2000); *Accord, State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶14; *State v. Nwachukwa,* 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶24; ¶26.

**{¶38}** In the case sub judice, Trooper Bayless testified that he stopped appellant for a traffic violation. The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *Dayton*

*v. Erickson*, 76 Ohio St.3d 3, 11-21, 1996-Ohio-431, 665 N.E.2d 1091. Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U .S. 103, 111, 95 S.Ct. 854, 861(1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225(1964).

{¶39} In the case sub judice, Trooper Bayless testified that he stopped appellant for following a semi too closely. Trooper Bayless testified as follows when asked what he meant by appellant was following too closely:

{¶40} A: Given the traffic conditions that day, it was raining, misty, road surfaces are wet, and I'm checking it on fixed objects with seconds gaps. The speed that we're traveling is 70 miles an hour, and I believe it was two seconds before the semi-trailer in front of him, which would not allow adequate stopping speed or reaction time to avoid a collision or swerve to avoid anything in the roadway.

{¶41} Q: And when you're saying you're checking on fixed objects what do you mean?

{¶42} A. The vehicle in front of him, when it goes, like if you see that bridge abutment there, when it's even with the bridge pillar, I start my time, one-one-thousand, two-one-thousand, and his vehicle hit the same object. You can't check it on moving objects because it's not accurate, but the stationary ones is just the time - -

{¶43} Q: And you're using this bridge here that - - what we see on the video as an example, but would that also be true for the road signs that you're passing?

{¶44} A: Correct, road signs, anything that's stationary.

{¶45} Q: Anything other than the other moving vehicles on the roadway?

{¶46} A: Correct.

**{¶47}** Q: So that's how you are checking and estimating the distance between Mr. Gaffney's car and the semi-truck in front of him?

**{¶48}** A: Yes.

**{¶49}** Q: And what was the timing that you were observing between the semi-truck and Mr. Gaffney's vehicle?

**{¶50}** A: I believe it was just around two seconds.

**{¶51}** Q: Did that stay consistent upon traveling through the roadway?

**{¶52}** A: Yes.

**{¶53}** Transcript of suppression hearing at 13-14.

**{¶54}** From viewing the videotape of the traffic stop, which was admitted at the hearing, it is difficult to determine how closely appellant was following the semi. However, based on the Trooper's testimony and the conditions of the road on that day, we cannot say that there were not sufficient facts supporting the stop of appellant and that the initial stop was unlawful.

**{¶55}** Appellant further contends that the stop was expanded into an unlawful detention. "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.' " *State v. Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 12, quoting *State v. Keathley,* 55 Ohio App.3d 130, 131, 562 N.E.2d 932(2nd Dist. Miami 1988). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id., citing State v. Bolden,* 12th Dist. Preble No. CA2003–03–007, 2004–Ohio–184, ¶ 17, *citing Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979). Further, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the

totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id., quoting State v. Carlson,* 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591(9th Dist. Medina 1995), *citing State v. Cook,* 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70(1992), and *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605(1985). *See also State v. Whitman,* 184 Ohio App.3d 740, 2009–Ohio–5647, 922 N.E.2d 293(5th Dist.Holmes); *State v. Woodson,* 5th Dist. Stark No.2007–CA–00151, 2008–Ohio–670, ¶ 21.

**{¶56}** However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Woodson,* ¶ 22, *citing State v. Retherford,* 93 Ohio App.3d 586, 600, 639 N.E.2d 498(2nd Dist. Montgomery 1994), *citing United States v. Brignoni–Ponce,* 422 U.S. 873, 881–882, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975). "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. Lake No.2001–L–205, 2003–Ohio–702, ¶ 30, *citing State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

**{¶57}** As noted by the Ohio Supreme Court, once the purpose of the traffic stop has ended, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." (Citations omitted.) *Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, ¶ 15. The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Smotherman* (July 29, 1994), 6th Dist. Wood App. No. 93WD082, unreported,

1994 WL 395128, citing *State v. Bevan*, 80 Ohio App.3d 126, 130, 608 N.E.2d 1099, 1101–1102 (11th Dist. 1982).

{¶58} In the case sub judice, we find that Trooper did not have reasonable and articulable suspicion of criminal activity to extend the scope of the traffic stop to conduct a search. There was testimony at the hearing that the Trooper was concerned that appellant appeared to be nervous by being rigid and was staring straight ahead as he passed the Trooper and by the fact that appellant was coming from Cleveland and going to Bellaire. The Trooper also indicted that appellant did not make eye contact with him when Trooper Bayless was at the window talking to appellant from the passenger's side and that appellant spoke to him in a low voice.

{¶59} At the suppression hearing, Trooper Bayless testified that after verifying that appellant was a licensed driver, he began to conduct a drug investigation "[b]ased on what I observed from him and what I observed on the records,…" as is stated above, Trooper Bayless had learned from a drug task force that appellant had trafficked in drugs. Transcript of suppression hearing at 61. He further testified that there was no drug interdiction policy by the Ohio State Highway Patrol that mandated that a drug dog be employed after a motorist was stopped for a minor traffic violation as here. The only reasons supporting the detention were that appellant appeared to be nervous by being rigid and staring straight ahead and failing to make eye contact, the fact that the vehicle was not rented to appellant and the rental agreement had expired, and that Trooper Bayless had received intelligence from other law enforcement officers that appellant had dealt drugs in the past. We also find that at the time Trooper Bayless walked his dog around appellant's vehicle, Trooper Bayless had fulfilled the purpose of the initial stop in that Trooper was not waiting for the information to return from the dispatch as to whether

appellant had a valid driver's license or there were any warrants out for his arrest. Rather, the Trooper engaged in a "fishing expedition" because he did not encounter additional facts that gave rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. We concur with appellant that "there was no basis to reasonably suspect that [appellant] was engaging in drug trafficking" and "[t]here was no justification to expand the traffic stop into a drug investigation." As noted by appellant, "[h]is detention accompanied by irrelevant questioning and his being ordered out of the car, searched in the company of another officer, and placed in the back of one of the police vehicles constituted an unlawful expanded detention in violation of the Fourth Amendment proscription against unreasonable searches and seizures."

{¶60} Based on the foregoing, we find that there was an illegal extension of the traffic stop and that the trial court erred in denying appellant's Motion to Suppress.

{¶61} Appellant's first assignment of error is, therefore, sustained.

II

{¶62} Appellant, in his second assignment of error, maintains that he was denied his right to a fair trial due to the accumulation of the trial court's evidentiary errors.

{¶63} Based on our disposition of appellant's first assignment of error, appellant's second assignment of error is moot.

{¶64} Accordingly, the judgment of the Guernsey County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.

By: Baldwin, J.

Hoffman, P.J. concurs

Wise, Earle, J. concurs separately.

*Wise, Earle, J. concurs separately*

{¶ 65}  I concur with the majority and join in the judgment to reverse and remand the case to trial court on the ground that the traffic stop was an unlawful expansion of appellant's detention. I also concur that the second assignment of error relating to appellant's claim of a denial of a fair trial is moot.

{¶ 66}   I write separately to opine that I find, as an initial matter, that there was not probable cause for a traffic stop based upon following too closely in violation of R.C. 4511.34, Space between moving vehicles.[1] Therefore, I would reverse on that ground even before getting to the unlawful expansion of the stop.

{¶ 67}  The trooper's dash camera video is in evidence and was played at the suppression hearing. The video begins at 14:44:29 clearly showing appellant driving legally in the right-hand lane of southbound I-77. He is following a truck, i.e., a semi-tractor trailer, at a legally acceptable distance. Appellant continues to follow the truck in the right-hand lane for one minute and four seconds, with the gap between his vehicle and the truck closing slowly.

{¶ 68}   After this period of just over one minute, at 14:45:33, appellant activates his left turn signal and moves into the left-hand lane and legally passes the truck. Appellant then uses his right turn signal and legally returns to the right-hand lane. The trooper follows appellant into the right-hand lane, activates his overhead emergency lights, and stops appellant.

---

[1] The transcript of the suppression hearing never specifically mentioned R.C. 4511.34 and no citation was written. The trooper indicated that he stopped appellant, "for a following too close violation." (Tr. at 11, 13). The trial court file contains appellant's motion to suppress, which does discuss R.C. 4511.34.

{¶ 69}  From the beginning of the video, until just before the traffic stop, the trooper is in the left-hand lane of the highway. The trooper, albeit in a different lane, is initially closer to appellant than appellant is to the truck. The gap between the trooper and appellant remains static for a few seconds, then during the next 10 to 15 seconds of the video, 14:44:35 to 14:44:48, the gap between appellant and the trooper widens significantly. It appears the trooper is slowing and dropping back from both appellant and the truck.

{¶ 70}  Then from 14:44:52 to 15:45:20, the trooper accelerates and while still in the left-hand lane, shortens the gap between himself and appellant. It appears as if the trooper is going to pass appellant. However, the trooper slows and does not pass appellant. He remains in the left-hand lane at a static distance fairly close behind appellant who is still in the right-hand lane, 14:45:20 to 14:45:33. At 14:45:33, appellant signals and moves into the left-hand lane and passes the truck. During those last thirteen seconds before he passes the truck, appellant is at the closest point to the truck. This is when the trooper claims appellant was too close.

{¶ 71} After the traffic stop, the trooper walks up to the appellant's vehicle and says the following: "Hello. Hey man the reason I'm stopping you, right before you passed that semi-truck you're just too close to him." This is exactly when the trooper was approaching and then hovering in the left-hand lane behind appellant. It was reasonable and prudent for appellant not to pass the truck until he was sure that the vehicle in the lane next to him (the trooper) was no longer overtaking him.

{¶ 72}  In spite of the trooper's claim, I find that at no point was appellant following too closely. Based upon the suppression hearing testimony and the video tape, I find this

to be a pretextual stop without probable cause to justify a traffic stop pursuant to R.C. 4511.34.