[Cite as *State v. Woods*, 2018-Ohio-3379.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon John W. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18-CA-13 |
| SHAUNE WOODS | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
Court of Common Pleas, Case No.
17CR550

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     August 22, 2018

APPEARANCES:

For Plaintiff-Appellant               For Defendant-Appellee

WILLIAM HAYES                    JEFFREY STAVOFF
LICKING COUNTY PROSECUTOR    901 SOUTH HIGH STREET, 2ND FLOOR
BY: DANIEL BENOIT               COLUMBUS, OH 43206
ASSISTANT PROSECUTOR
20 S. SECOND STREET, 4TH FLOOR
NEWARK, OH 43055

*Gwin, J.*

{¶1} Plaintiff-appellant the State of Ohio appeals the February 16, 2018 Judgment Entry of the Licking County Court of Common Pleas granting defendant-appellee Shaune Woods ["Woods"] motion to suppress evidence.

*Facts and Procedural History*

{¶2} On November 3, 2015, Trooper Drew Untied was sitting stationary watching traffic and looking for criminal indicators. Trooper United was accompanied that day by another trooper, Trooper Michael Wilson. Trooper Wilson observed a vehicle of interest pass by, noting that the vehicle appeared to be driverless. Driverless means that the officers could not see any of the occupants of the vehicle. The plate of the vehicle came back to a rental car. Trooper Untied stated that those involved in criminal activity often time have rental vehicles to avoid seizure of their own property. The vehicle was dusty, which is typically uncommon for a rental car, and there were fingerprints in the area of trunk of the vehicle. The troopers pulled out of their position, and ultimately stopped the vehicle for a traffic offense of following too close.

{¶3} The entirety of the traffic stop was recorded on the dash camera system in place within the trooper's cruiser.

{¶4} After the vehicle was stopped, the driver of the vehicle was identified as Woods. The passenger was identified as Brooks. The trooper approached Woods and explained to him the reason that the vehicle had been pulled over.

{¶5} The vehicle is subject to search and eventually another officer arrives to offer some professional courtesy to the troopers. Ultimately, drugs are located within the passenger side seat of the vehicle, inside the void of the passenger seat.

**{¶6}** Woods filed a motion to suppress the evidence located as a result of the vehicle being stopped on September 7, 2017. The state responded in writing on September 15, 2017. An oral hearing was held on October 5, 2017. On February 26, 2018, the trial court issued a ruling granting Woods' motion to suppress evidence.

*Assignment of Error*

**{¶7}** The state raises one assignment of error,

**{¶8}** "I. THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS, BY DETERMINING THAT THE STOP OF THE APPELLEE'S VEHICLE WAS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSITUTION."

*Law and Analysis*

**STATE'S RIGHT TO APPEAL.**

**{¶9}** A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only where the state has complied with Crim.R. 12(K). *State v. Perez,* 1st Dist. Hamilton Nos. C-040363, C-040364, C-040365, 2005-Ohio-1326, ¶12, *citing State v. Buckingham,* 62 Ohio St.2d 14, 402 N.E.2d 536(1980), syllabus (interpreting former Crim.R. 12(J)).

**{¶10}** Crim.R. 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.

* * *

**{¶11}** Our review of the record reveals a certifying statement timely filed by the prosecutor as outlined in Crim.R. 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

## STANDARD OF APPELLATE REVIEW.

**{¶12}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the

applicable legal standard.   See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).   That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."   *Ornelas*, supra at 698, 116 S.Ct. at 1663.

## ISSUE FOR APPEAL.

### A. *Whether the Troopers had probable cause to conduct a traffic stop of Woods' vehicle.*

{¶13}  The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."   The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution.   *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081(1961).   The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes.   *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660(1979), citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116(1976).

{¶14}  The Supreme Court of Ohio has observed, "'[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.'"   *City of*

*Bowling Green v. Godwin*, 110 Ohio St.3d 58, 850 N.E.2d 698, 2006–Ohio–3563, ¶ 13,

*quoting Gaddis ex rel. Gaddis v. Redford Twp.* (E.D.Mich.2002), 188 F.Supp.2d 762, 767

There are actually two types of "traffic" stops, and each has a different constitutional

standard applicable to it. In *State v. Moller,* the Court of Appeals observed,

> First is the typical non-investigatory traffic stop, wherein the police
> officer witnesses a violation of the traffic code, such as crossing over the
> centerline of a road, and then stops the motorist for this traffic violation.
> Second is the investigative or "*Terry* " stop, wherein the officer does not
> necessarily witness a specific traffic violation, but the officer does have
> sufficient reason to believe that a criminal act has taken place or is
> occurring, and the officer seeks to confirm or refute this suspicion of criminal
> activity. *See Terry v. Ohio* (1968), 392 U .S. 1, 21, 88 S.Ct. 1868, 1879-
> 1880. A non-investigatory traffic stop must be supported by probable
> cause, which arises when the stopping officer witnesses the traffic violation.
> *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769,
> 1772; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332.
> By contrast, an investigatory *Terry* stop is proper so long as the stopping
> officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392
> U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287(Oct. 23, 2000); *Accord, State v.*

*Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶14;

*State v. Nwachukwa,* 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶24; ¶26.

{¶15}  The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 1996-Ohio-431, 665 N.E.2d 1091.  Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'"  *Gerstein v. Pugh*, 420 U .S. 103, 111, 95 S.Ct. 854, 861(1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225(1964).

{¶16}  In the case at bar, Trooper Untied testified that he observed Woods violate R.C. 4511.34, Space between moving vehicles,

> The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.
>
> The driver of any truck, or motor vehicle drawing another vehicle, when traveling upon a roadway outside a business or residence district shall maintain a sufficient space, whenever conditions permit, between such vehicle and another vehicle ahead so an overtaking motor vehicle may enter and occupy such space without danger.  This paragraph does not prevent overtaking and passing nor does it apply to any lane specially designated for use by trucks.

Outside a municipal corporation, the driver of any truck, or motor vehicle when drawing another vehicle, while ascending to the crest of a grade beyond which the driver's view of a roadway is obstructed, shall not follow within three hundred feet of another truck, or motor vehicle drawing another vehicle. This paragraph shall not apply to any lane specially designated for use by trucks.

Motor vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade, shall maintain a sufficient space between such vehicles so an overtaking vehicle may enter and occupy such space without danger. This paragraph shall not apply to funeral processions.

{¶17} In the case at bar, the trial court's ruling granted the motion to suppress on the basis that the stop of the Appellee's vehicle was unconstitutional. The trial court noted,

The video shows moderately heavy traffic traveling on a major interstate highway at reasonable speeds for the conditions and under the posted limits. It shows that the cruiser maintained its position in the left lane several car lengths behind the Defendants' vehicle, which was in the right lane, essentially in the driver's blind spot. It depicts that, over the course of several miles, the vehicles in the left lane in front of the cruiser start merging into the right hand causing the vehicles in that lane to lightly brake in order to maintain appropriate spacing.

Why would the left lane drivers be merging right? Simple. There's a cop car behind them, in the left lane. Most reasonable drivers merge right when a vehicle behind them appears to want to go faster, especially when it's the police. In fact, given the circumstances, it was required under R.C. 4511.25(B)(1). But regardless of the reason, it caused right lane traffic to become more congested. As a result, vehicles braked to slow down and accommodate. That's what the defendant did in this case. He did not violate R.C. 4511.34, by "following too closely."

* * *

Based on the evidence presented, and for the reasons set forth above, the Court finds that there was not probable cause to believe that a traffic violation had been committed. The Court reaches this conclusion based primarily on the video taken from the cruiser. The Court finds that the video was more reliable and more accurate than the other evidence offered. And at times, the video simply contradicted the trooper's version of what occurred.

For example, Trooper Untied testified it took the driver a long time to come to a stop after he initiated his lights. The video contradicts this claim. Once the driver was ordered to pull over, he did so in a reasonable and timely manner.

He also claimed that the vehicle very dusty and that there were fingerprints on the lift gate, which he took as a sign that the vehicle must have been a long term rental and therefore used in the drug trade. The video

showed otherwise. In fact, the vehicle in the video appeared as clean any other vehicle on the highway that day. After all, it was an early November evening in Ohio. Who knows what the weather conditions had been like the week, days, or even hours before the stop. It's Ohio. The point is weather can change quickly here. If that's the threshold by which traffic stops are made, then we're all in jeopardy. And if it was dirty, so what? Having a dusty vehicle with fingerprints on the hatch back or tailgate, is not evidence of a traffic violation or reason to believe a crime is being committed.

Another claim worthy of mention is Trooper Wilson's testimony that what drew his attention to this vehicle was that he noticed the vehicle appeared to be "driverless" when it passed them at the 113 mile post. He stated that there were no visible occupants in the vehicle and speculated that the driver and any passengers must have pushed their seats back in order to avoid detection. Keep in mind that according the government's version of events, this vehicle passed their stationary location at 60-70 miles per hour in the blink of an eye. Trooper Untied testified that he did not even notice the vehicle as it passed. And the fact that Trooper Wilson claims that his inability to see a person behind the wheel - in that split second - and therefore, something nefarious must be going on does not bolster his credibility, it subverts it. If there were credible evidence to support a claim that a driver or occupant laid his or her seat back in order to avoid detection, one might expect other evidence might be offered to support the observation. But none was. There were no photographs of

the interior compartment of the vehicle, there were no comments or questions heard on the recording about not having seen the occupants when they passed by. Nor was there any testimony about furtive movements taking place inside the vehicle before the stop was made.

*Decision and Entry Granting Defendant's Motion to Suppress,* Feb. 16, 2018 at 3; 5-6.

{¶18} In *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, the Ohio Supreme Court examined the denial of a motion to suppress in a prosecution for driving under the influence in which the defendant alleged that the state had failed to substantially comply with certain requirements of the Ohio Administrative Code in conducting his blood-alcohol test. The Court stated,

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539."

*Burnside* at ¶ 8. In the case at bar, in order to establish probable cause, the state had

the burden to provide credible evidence that Woods followed another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway. Here, the record contains competent, credible evidence that supports the trial court's conclusion that Woods did not. A review of the video evidence and the testimony of the troopers does not establish that Woods followed another vehicle, streetcar, or trackless trolley *more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.* As the trial court noted the video shows moderately heavy traffic traveling on a major interstate highway at reasonable speeds for the conditions and under the posted limits. As the right-hand lane in which Woods was traveling became more congested by vehicles merging into the lane from the left-hand lane Woods braked to accommodate the slower traffic. It does not appear that any of the vehicles were traveling six or more car lengths behind the vehicle that they were following. Accordingly, competent, credible evidence was presented that Woods was not following *more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.*

{¶19} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct.

843, 74 L.Ed .2d 646 (1983).  As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses.  *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992).  Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment.  *Cross Truck Equipment Co., Inc. v. Joseph A. Jeffries Co.,* 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982).  Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71(1988).

{¶20} In *Seasons Coal Co. v. Cleveland*,  10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984), the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.  A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *See, also State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), syllabus 1.

{¶21} Accordingly, the trial court's determination that the troopers did not have probable cause to stop Woods is supported by competent, credible evidence, and therefore the trial court properly granted Woods' motion to suppress.

{¶22} The state's sole assignment of error is overruled.

{¶23} The Judgment of the Licking County Court of Common Pleas is affirmed.


By Gwin, J.,

Wise, John, P.J., and

Wise, Earle, J., concur