[Cite as *State v. Worstell*, 2019-Ohio-5228.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CA 00034 |
| GALEN WORSTELL | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
                             Court of Common Pleas, Case No.
                             18CR00828

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      December 16, 2019

APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

WILLIAM HAYES                        WILLIAM CRAMER
Licking County Prosecutor            470 Olde Worthington Road, Ste. 200
By: CLIFFORD J. MURPHY               Westerville, OH 43082
Assistant Prosecutor
20 South Second Street
Newark, OH 43055

*Gwin, P.J.*

{¶1} Defendant-appellant Galen Worstell ["Worstell"] appeals Judgment of the Licking County Court of Common Pleas overruling his motion to suppress evidence.

### Facts and Procedural History

{¶2} Worstell was charged with aggravated drug trafficking in violation of R.C. 2925.11(A)(2)/(C)(1)(d) and aggravated drug possession in violation of R.C. 2925.03(A)/(C)(1)(c). Both counts alleged that the drug was methamphetamine in amount more than five times bulk, which made both counts second-degree felonies.

{¶3} Worstell filed a motion to suppress, arguing that it was unconstitutional to stop the vehicle he was riding in and to continue to detain him after another passenger was found with drugs.

### Motion to Suppress Hearing.

{¶4} Deputy Dan Pennington of the Licking County Sheriff's office testified that on October 3, 2018, he was training a new deputy, Deputy Delane King. They were in full uniform and driving a marked cruiser, and they were engaged in traffic enforcement. Deputy King was driving and Deputy Pennington was in the passenger seat.

{¶5} At around 7:42 p.m., they were stopped in an abandoned lot along Lancaster Road across the street from a Pilot gas station. They saw a 2000 Plymouth Voyager minivan drive past on Lancaster Road and travel left of center. The traffic violation was not captured on the cruiser dash cam.

{¶6} Deputy Pennington explained that they followed the minivan for a while in order to run the tags. When the tags came back as expired and the registered owner as

having an expired license, they decided to stop the minivan. He then activated the cruiser's dash camera video recording system. (T. at 25-26).

{¶7} After stopping the minivan, Deputy King approached the driver side, while Deputy Pennington approached the passenger side. Deputy Pennington spoke with the occupants and informed the driver of why he was being stopped. Deputy Pennington requested identification from all the occupants. The driver was Jeremiah Horton, the front seat passenger was Jason Adams, and the middle seat row passenger was Worstell. The driver admitted that the van had been pulling to the left.

{¶8} Adams did not have his identification with him, so he provided a social security number. While Adams was talking, Deputy Pennington suspected that he had something in his mouth because it sounded like he was choking. Deputy Pennington asked Adams to remove the item from his mouth and he complied. It appeared to be a bag of methamphetamine. Adams confirmed that it was methamphetamine.

{¶9} The deputies removed all the occupants from the vehicle. In searching the vehicle, the deputies found two meth pipes and a digital scale under the front passenger seat. Under the middle row, where Worstell was sitting, the deputies found another digital scale. In the back seat, or third row, the deputies found a black drawstring bag containing methamphetamine.

{¶10} Deputy Pennington *Mirandized* all three occupants and questioned them. Adams admitted that the methamphetamine found in his mouth was his, along with the scale and pipes beneath his seat. Horton claimed that the black drawstring bag found in the back seat of the minivan belonged to Worstell. Worstell admitted that the methamphetamine found inside the black bag was his, and that he had purchased it in

Columbus for $500 and was bringing it back to sell in Newark.  At some point, the driver, Horton, admitted that he was taking Adams and Worstell to get methamphetamine.

{¶11}  Deputy Pennington also testified that the registered owner of the minivan was Horton.  Because Horton's license was reported as suspended, they had the option of impounding the minivan if there was nobody else to drive it.  Adams and Worstell both had suspended licenses.   As a result, the minivan would have to be towed and impounded, resulting in an inventory search.

{¶12}  The dash cam video from the deputies' cruiser was shown during the hearing and admitted into evidence.

{¶13}  At the conclusion of the hearing, the trial court denied the motion, finding that there was sufficient evidence of a traffic infraction to justify the stop and that the discovery of the methamphetamine in the mouth of Adams was sufficient to justify extending the stop to include a full search.  The court also noted that the evidence was subject to inevitable discovery given the expired tags, expired licenses, and possibility of impoundment and resulting inventory search.

{¶14}  Following the denial of the motion to suppress, Worstell pled no contest.  At sentencing, the court merged the possession charge into the trafficking charge.  The court then imposed four years mandatory prison time concurrent to a prior case and a fine of $750, which was suspended due to Worstell's indigency.

*Assignment of Error*

{¶15}  Worstell raises one Assignment of Error,

{¶16}  "I. APPELLANT'S RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES UNDER THE STATE AND FEDERAL CONSTITUTIONS

WERE VIOLATED BY A TRAFFIC STOP THAT WAS UNSUPPORTED BY A REASONABLE SUSPICION OF A TRAFFIC OFFENSE."

*Law and Analysis*

{¶17} In his sole assignment of error, Worstell argues that the trial court erred in denying his motion to suppress and in finding that the officers had a reasonable suspicion to stop the minivan. Worstell contends that it was dark, the cruiser was parked at an angle to the roadway and the traffic violation was not recorded on the cruiser's dashcam video recording system.

**STANDARD OF APPELLATE REVIEW.**

{¶18} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690,

116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**ISSUE FOR APPEAL.**

*Whether the Deputies stop of the minivan was lawful.*

{¶19}  The Supreme Court of Ohio has observed, "'[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.'"  *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 13, *quoting  Gaddis ex rel. Gaddis v. Redford Twp.*, 188 F.Supp.2d 762, 767(E.D.Mich.2002). There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it.  In *State v. Moller*, the Court of Appeals observed,

> First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry*" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity.  *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880 [20 L.Ed.2d 889].  A non-investigatory traffic stop must be supported by probable cause, which arises when the stopping officer witnesses the

traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 [135 L.Ed.2d 89]; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332 [54 L.Ed.2d 331]. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287 (Oct. 23, 2000); *Accord, State v. Baughman,* 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶ 14; *State v. Nwachukwa*, 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 24; ¶ 26; *State v. Woods*, 5th Dist. Licking No. 18-CA-13, 2018-Ohio-3379, 117 N.E. 3d 1017, ¶14.

{¶20} The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

{¶21} In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified

because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays,* the Ohio Supreme Court made the following observation as it pertains to Ohio law,

> Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a

reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.  The Ohio Supreme Court concluded,

> Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a *reasonable and articulable suspicion* considering all the circumstances, then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added).  *See, State v. Marcum,* 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293.

{¶22}  In the case at bar, Deputy Pennington testified that he witnessed a left-of-center violation.  The trial court found this testimony to be credible, based in part upon the minivan driver's admission that the vehicle had been pulling left.

{¶23}  In *State v. Brinkley*, the Ohio Supreme Court emphasized,

> As we held in *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583, "the weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials." *Accord DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542; *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972.

105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959.

{¶24} We find the trial court's decision is based upon competent, credible evidence in the form of Deputy Pennington's testimony.  We find that unless the cruiser is immediately behind a vehicle at the time of the traffic violation, it would be impossible to record the violation in real-time.  There is no requirement that a traffic violation be recorded.

{¶25}  Worstell's First Assignment of Error is overruled.

{¶26}  The judgment of the Licking County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur