[Cite as *State v. Chambers*, 2020-Ohio-1483.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2019 AP 07 0021 |
| | : | |
| ERIC L. CHAMBERS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2018
CR 01 0004

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      April 13, 2020

APPEARANCES:

For Plaintiff-Appellee:                                 For Defendant-Appellant:

RYAN STYER                                           MARK A. PERLAKY
TUSCARAWAS COUNTY PROSECUTOR      ASSISTANT PUBLIC DEFENDER
153 N. Broadway Street
MICHAEL J. ERNEST                                New Philadelphia, OH 44663
125 East High Ave.
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Defendant-Appellant Eric L. Chambers appeals the June 11, 2019 judgment entry of the Tuscarawas County Court of Common Pleas denying his motion to suppress. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On January 8, 2018, the Tuscarawas County Grand Jury indicted Defendant-Appellant Eric L. Chambers on one count of Aggravated Possession of Drugs (Methamphetamine), a second-degree felony in violation of R.C. 2925.11. Chambers entered a plea of not guilty.

{¶3}   Chambers filed a motion to suppress on March 21, 2019. In his motion, he argued the evidence used by the State was based on a warrantless seizure because: 1) the arresting officer did not have a reasonable, articulable suspicion nor probable cause to stop the vehicle Chambers was a passenger in and 2) the arresting officer did not have a reasonable, articulable suspicion to prolong Chamber's detention after he was stopped. The trial court conducted an evidentiary hearing on April 29, 2019. The following evidence was adduced at the hearing.

{¶4}   On March 30, 2017, Lieutenant Joel Smith of the Ohio State Highway Patrol was patrolling I-77 in Tuscarawas County. He had parked his patrol car in the crossover on I-77 just inside Tuscarawas County, north of Exit 94. While he was parked, he observed a vehicle in the left lane passing other vehicles. As the vehicle passed Lt. Smith, he observed Chambers, who is African-American, driving the vehicle with a rigid posture and looking straight ahead.  The vehicle slowed down and changed lanes. Lt. Smith pulled

out of the crossover and as he was catching up with the vehicle, the vehicle got off the highway at the exit for State Route 212. (T. 9-10).

{¶5} Lt. Smith passed the exit and continued south on I-77. He pulled off at the next crossover, just south of the State Route 212 exit. As he was parking his vehicle at the crossover, Lt. Smith saw the same vehicle again traveling southbound on I-77. He noticed the driver of the vehicle was now a Caucasian female. When the vehicle passed Lt. Smith, he pulled out of the crossover into the left lane of southbound I-77. At this time, the dashboard camera in the patrol car activated and began recording. The State submitted the video recording as evidence at the hearing. Lt. Smith observed the vehicle following less than a car length behind a semi-tractor trailer in the right lane. The driver of the vehicle turned on her left blinker and Lt. Smith activated his lights. (T. 10, 14).

{¶6} Lt. Smith testified that he, "[s]topped the vehicle because I saw that Mr. Chambers was driving the first time I seen it and now there was another driver in the driver's seat." (T. 10). He also saw the vehicle following too closely to the semi-tractor trailer in the right lane. (T. 10).

{¶7} After Lt. Smith activated his lights, the driver pulled the vehicle over. The officer waved the driver out of the vehicle, advised her why he stopped her, and asked for her driver's license, insurance card, and vehicle registration. Lt. Smith was suspicious because they had switched drivers so he wanted to separate the driver and Chambers so he could speak to them separately. (T. 23). The driver said she did not have her Tennessee driver's license with her and tried to remember the number. Lt. Smith patted her down for weapons and placed her in the back seat of his patrol car. (T.10-11).

{¶8}   Lt. Smith went back to the vehicle and made contact with Chambers in the front passenger's seat. Chambers did not have a driver's license and provided his Social Security number. He told Lt. Smith that he and the driver were heading from Akron to Tennessee. As he was speaking to Chambers, Trooper Millburn, the K-9 handler, arrived on the scene with Drago. Lt. Smith brought Chambers to the patrol car, conducted a weapons pat down, and placed him the patrol car. He started running the driver's and Chambers' information through LEADS to confirm their identities. (T. 11).

{¶9}   While Lt. Smith was running the information through the computer to confirm the driver's identity, Drago performed a sniff of the vehicle. Drago indicated the odor of narcotics by scratching the rear of the vehicle before Lt. Smith had any information back on the driver or Chambers. (T. 26). Lt. Smith read the driver and Chambers their *Miranda* rights. (T. 12).

{¶10} The officers conducted a vehicle search and discovered methamphetamine under the passenger's seat. After questioning, the driver gave a bag of methamphetamine to Lt. Smith. Chambers was later searched and a bag of marijuana was found on his person. Chambers allegedly admitted to possessing the methamphetamine.

{¶11} After the evidentiary hearing, the State filed a memorandum in opposition to the motion to suppress on May 13, 2019. Chambers filed a memorandum in support of his motion to suppress on May 17, 2019. On June 11, 2019, the trial court overruled Chambers' motion to suppress. It found that Lt. Smith had sufficient, legal probable cause to effectuate a traffic stop of the vehicle. It further found that the detention of Chambers was lawful and the canine walk-around of the vehicle did not violate Chambers'

constitutional rights. The detention did not go beyond the period necessary to effectuate a traffic stop and issue a citation.

{¶12} On July 1, 2019, Chambers withdrew his plea of not guilty and entered a plea of no contest to the charge of aggravated possession of drugs. Via judgment entry filed on July 2, 2019, the trial court found Chambers guilty and sentenced Chambers to a mandatory, minimum two-year prison term. The trial court, however, stayed the execution of the sentencing orders until the resolution of Chambers' appeal of his conviction and sentence.

{¶13} It is from the July 2, 2019 judgment entry that Chambers now appeals.

## ASSIGNMENTS OF ERROR

{¶14} Chambers raises two Assignments of Errors:

{¶15} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THE CASE BECAUSE THE CITING OFFICER DID NOT HAVE PROBABLE CAUSE TO STOP APPELLANT'S VEHICLE.

{¶16} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THE CASE AS THE CITING OFFICER UNCONSTITUTIONALLY PROLONGED THE STOP OF APPELLANT'S VEHICLE."

## ANALYSIS

{¶17} Chambers argues in his first and second Assignment of Errors that the trial court should have granted his motion to suppress. We disagree.

**Standard of Review**

{¶18} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶19} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate

court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶20} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Pullin*, 5th Dist. Stark No. 2019CA00105, 2020-Ohio-787, 2020 WL 1042290, ¶ 9 citing *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**I.**

{¶21} Chambers contends in his first Assignment of Error that the trial court erred when it found Lt. Smith had sufficient, legal probable cause to effectuate a traffic stop of the vehicle in which Chambers was a passenger. Chambers argues the video evidence presented at the hearing shows the driver of the vehicle did not commit a traffic violation, therefore Lt. Smith had no reason to stop the vehicle.

{¶22} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution. *State v. Marcum*, 5th Dist. Delaware No. 18-CAC- 11 0083, 2019-Ohio-2293, 2019 WL 2420558, ¶ 25 quoting *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648,

653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

{¶23} This Court has previously addressed the review of the Fourth Amendment implications on a traffic stop. *See State v. Worstell*, 5th Dist. Licking No. 2019 CA 00034, 2019-Ohio-5228, ¶ 19; *State v. Gaffney*, 5th Dist. Guernsey No. 18 CA 4, 2018-Ohio-4094, ¶ 37. We noted that the Ohio Supreme Court of Ohio has observed, " '[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.' " *State v. Marcum*, 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293, ¶ 26 citing *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 13, quoting *Gaddis ex rel. Gaddis v. Redford Twp.*, 188 F.Supp.2d 762, 767(E.D.Mich.2002). There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it. In *State v. Moller*, the Court of Appeals observed:

> First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry*" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880 [20 L.Ed.2d 889]. A non-investigatory traffic stop must be supported by probable cause, which

arises when the stopping officer witnesses the traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 [135 L.Ed.2d 89]; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332 [54 L.Ed.2d 331]. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287 (Oct. 23, 2000); *Accord, State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶ 14; *State v. Nwachukwa*, 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 24; ¶ 26; *State v. Woods*, 5th Dist. Licking No. 18-CA-13, 2018-Ohio-3379, 117 N.E. 3d 1017, ¶14.

{¶24} The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *State v. Worstell*, 5th Dist. Licking No. 2019 CA 00034, 2019-Ohio-5228, 2019 WL 6894430, ¶¶ 19-20 quoting *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

{¶25} Lt. Smith testified he stopped the vehicle because it was following too closely to a semi-tractor trailer on the highway in violation of R.C. 4511.34(A). R.C. 4511.34(A) states, "The operator of a motor vehicle, streetcar, or trackless trolley shall

not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway." Lt. Smith stated at the hearing that he observed Chambers' vehicle following less than a car length behind a semi-tractor trailer in the right lane of the highway.

{¶26} The dashcam video recording submitted as evidence shows Chambers' vehicle travelling at highway speeds in the right lane behind a semi-tractor trailer. From the video, it is clear that the space between Chambers' vehicle and the truck is the length of a small car or less. As Lt. Smith approaches the vehicle in the left lane, the driver of the vehicle turns on her left blinker. Lt. Smith pulls in behind Chambers' vehicle in the right lane and both vehicles pull over to the side of the highway. Chambers argues the driver of the vehicle pulled in behind the semi-tractor trailer to let the officer pass as he approached in the left lane, but the video does not show the vehicle traveling in the left lane. The video only shows the vehicle driving in the right lane behind the semi-tractor trailer. Lt. Smith testified that believed Chambers' vehicle was in the right lane the entire time.

{¶27} Upon review of the video and Lt. Smith's testimony, we find the evidence in this case shows that Chambers' vehicle was travelling less than a car length behind a semi-tractor trailer on I-77 in violation of R.C. 4511.34(A). We find the trial court was correct when it determined Lt. Smith had probable cause that a traffic violation had occurred, therefore the stop was not unreasonable under the Fourth Amendment.

{¶28} Chambers' first Assignment of Error is overruled.

**II.**

{¶29} Chambers argues in his second Assignment of Error that the trial court erred when it found that Lt. Smith did not unconstitutionally prolong the traffic stop in order to conduct the canine walk-around. We disagree.

{¶30} When detaining a motorist for a traffic violation, an officer may delay a motorist for a time sufficient to issue a ticket or a warning. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *Id.* Further, in determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *Id.*

{¶31} However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Batchili* at ¶ 34; *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–882, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

{¶32} The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The officer needs no suspicion or cause to "run

the dog around" the stopped vehicle if he or she does so contemporaneously with the legitimate activities associated with the traffic violation. *See Caballes*, 543 U.S. at 409, 125 S.Ct. at 837–38. A canine walk-around of a vehicle, which occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop and issue a citation does not violate the individual's constitutional rights. *Caballes, supra*. This is so because the detention was not illegally prolonged in order to make the walk-around. *See, State v. Batchili*, 113 Ohio St.3d 403, 865 N.E.2d 1282, ¶ 19. However, a traffic stop may not be extended in order to conduct a dog sniff absent a reasonable suspicion of drug-related activity. *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 1616-17, 191 L.Ed.2d 492 (2015).

{¶33} In this case, we find the record shows Lt. Smith did not unconstitutionally prolong the traffic stop. The driver said she did not have her Tennessee driver's license with her and she tried to remember the number. Lt. Smith patted her down for weapons and placed her in the back seat of his patrol car. (T.10-11).

{¶34} Lt. Smith went back to the vehicle and made contact with Chambers in the front passenger's seat. Chambers did not have a driver's license and provided his Social Security number. He told Lt. Smith that he and the driver were heading from Akron to Tennessee. As he was speaking to Chambers, Trooper Millburn, the K-9 handler, arrived on the scene with Drago. Lt. Smith brought Chambers to the patrol car, conducted a weapons pat down, and placed him the patrol car. He started running the driver's and Chambers' information through LEADS to confirm their identities. (T. 11).

{¶35} While Lt. Smith was running the information through the computer to confirm the driver's identity, Drago performed a sniff of the vehicle. Drago indicated the

odor of narcotics by scratching the rear of the vehicle before Lt. Smith had any information back on the driver or Chambers. (T. 26). Lt. Smith read the driver and Chambers their *Miranda* rights. (T. 12).

{¶36} We have reviewed the video recording of the traffic stop. The time from the traffic stop by Lt. Smith to the time Trooper Millburn arrived on the scene was 2.53 minutes. 2.14 minutes elapsed from the time Trooper Millburn arrived on the scene to the sniff of Chamber's vehicle by Drago. During this time, Lt. Smith was trying to confirm the identities of Chambers and the driver. Drago reacted to the trunk of the vehicle within 15 seconds.

{¶37} Based on the evidence, we do not find the canine walk-around did not go beyond the period necessary to effectuate the stop and issue a citation and therefore it did not violate the Chambers' constitutional rights.

{¶38} Chambers' second Assignment of Error is overruled.

**CONCLUSION**

{¶39} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.