[Cite as *State v. Olagbemiro*, 2018-Ohio-3540.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-170451 |
| | | C-170452 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1504406 |
| | | B-1606870 |
| vs. | : | |
| | | *O P I N I O N.* |
| AKINTOLA OLAGBEMIRO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: September 5, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1}     After pleading no contest, Akintola Olagbemiro was convicted of heroin possession and found guilty of a community-control violation.  Prior to entering his pleas, Olagbemiro had moved unsuccessfully to suppress evidence of the drugs upon which the charges were based.  In these consolidated appeals, Olagbemiro challenges the trial court's denial of his motion to suppress, maintaining that the drugs were the fruits of an unconstitutional vehicle search during a traffic stop.  We hold that the trial court properly denied Olagbemiro's motion to suppress because the challenged vehicle search was reasonable under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and therefore, performed in conformity with Olagbemiro's federal and state constitutional rights. Consequently, we affirm.

## Background Facts and Procedure

{¶2}     At Olagbemiro's suppression hearing, Kevin Butler, a 13-year veteran officer of the Cincinnati Police Department, testified to the following facts.  The Cincinnati police had received information from a confidential informant that a black male known as "Rico" was selling heroin out of a residence on Riverside Drive.  Plain clothed officers sent to perform surveillance of the residence observed several individuals arrive at the residence and leave quickly, in a manner consistent with drug trafficking.  At about 2:00 p.m., the officers saw a black male and a woman exit from the residence and enter a Lincoln sedan on the street.   The male occupied the front passenger seat and the woman occupied the driver's seat.   After the driver failed to activate a turn signal before pulling away from the curb, Officer Butler was

dispatched in his police sports utility vehicle ("SUV") to stop the Lincoln for the traffic violation.

{¶3} When Officer Butler effectuated the stop around the corner and up the steep hill on Collins Avenue, he observed through the tinted rear window of the Lincoln the silhouette of the passenger's head moving from "side to side and up and down." From the pattern of that motion, Officer Butler concluded that the passenger, later determined to be Olagbemiro, may have been trying to conceal a weapon or contraband. Accordingly, Officer Butler waited for other officers to arrive and provide him with cover. When they arrived, he approached the vehicle on the driver's side and requested that the driver and passenger present identifying information. Olagbemiro did not present an identification card, but told the officer his name was Akintola Olagbemiro, Jr. At that point, the driver of the vehicle exclaimed, "Jesus, Rico, that's your name?"

{¶4} Officer Butler returned to his police SUV and ran the names of the occupants in his computer, finding no outstanding warrants for either. On his second approach of the vehicle, Officer Butler asked Olagbemiro to exit, and subjected him to a protective pat-down, which revealed no weapons. Olagbemiro was detained but not handcuffed as Officer Butler searched the area in the passenger compartment of the vehicle where he thought Olagbemiro could have been concealing a weapon during the course of Olagbemiro's earlier movements. When Officer Butler opened the center console, he saw a digital scale used for drug dealing. He then took Olagbemiro into custody for possession of drug paraphernalia, and transported him to the Hamilton County Justice Center. During a strip search undertaken at the time of booking, a deputy from the Hamilton County Sheriff's

Office discovered a bag containing a mixture of heroin and cocaine on Olagbemiro's person, the drugs that are the subject of the suppression motion.

{¶5} Olagbemiro was the only other witness to testify at the suppression hearing. After testifying that he was the passenger in the Lincoln on the day of the stop, he authenticated photographs he had taken at another time and place depicting the tint on the rear window of the Lincoln. According to Olagbemiro, the tinting on the window prevented Officer Butler from seeing inside the vehicle.

{¶6} Olagbemiro was later indicted in the case numbered B-1606870 for possessing heroin and cocaine, and charged with violating the terms of his community control in the case numbered B-1504406. He moved to suppress the drugs seized from his person, in part on the ground that they were the fruits of an illegal search of the Lincoln. In denying the motion, the trial court determined that the protective search of the passenger compartment during the lawful traffic stop was reasonable under *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, that Olagbemiro's arrest for possession of drug paraphernalia was based on probable cause, and that the drugs were discovered during a routine and lawful security search of his person at the justice center.

{¶7} Olagbemiro then pleaded no contest to the drug charges in B-1606870 and was sentenced to 12 months in prison for the possession of heroin. He was also found to have violated the conditions of his community control in B-1504406 and was sentenced to a nine-month prison term, to be served consecutively to the sentence imposed in B-1606870. Olagbemiro challenges the denial of his motion to suppress in his sole assignment of error.

**Analysis**

{¶8} Olagbemiro maintains that the drugs recovered on his person must be suppressed as the fruits of the illegal search of the Lincoln. The gist of his argument is that Officer Butler's testimony that he had seen movements inside the Lincoln was not credible and not detailed enough to provide the necessary "probable cause" justifying a warrantless search of the Lincoln during the traffic stop.

{¶9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts. *Id.* Olagbemiro's argument suggests that the trial court erred in making its factual determinations and that it erred as a matter of law by applying the "reasonable suspicion" standard to those facts when reviewing the validity of the search.

{¶10} According to Olagbemiro, the search of the passenger compartment of the legally stopped vehicle was unreasonable unless Officer Butler had "probable cause" to believe that it contained evidence of a crime, such as the drug paraphernalia that was recovered. This "automobile exception" is a well-established exception to the constitutional warrant requirement. *See State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000); *State v. Jones*, 1st Dist. Hamilton No. C-130069, 2014-Ohio-1201, ¶ 6, citing *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). But, as the trial court recognized, the "automobile exception" is not the only warrant-requirement exception applicable to automobile searches.

{¶11} Another firmly-established exception allows for a limited protective search for weapons upon a standard of reasonable suspicion, which is a lesser

standard than probable cause. This exception is based on the principles announced in *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

> [A] search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), citing *Terry* at 21, cited in *State v. Bobo*, 37 Ohio St.3d 177, 180-81, 524 N.E.2d 489 (1988).

{¶12} This court, following *Long*, has held that this concern for safety may reasonably continue through the time the occupants reenter a vehicle at the conclusion of a traffic stop. *See Jones* at ¶ 19, quoting *State v. Smith*, 1st Dist. Hamilton No. C-110727, 2013-Ohio-2208, ¶ 16-17.

{¶13} Undisputedly, the purpose of the limited search for weapons, is " 'to allow the officer to pursue his investigation without fear of violence,' " and not to search for evidence of a crime. *Bobo* at 180, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, if the officer should discover contraband other than weapons while conducting a lawful and limited *Terry* search, there is no constitutional provision requiring its suppression. *Long* at 1050; *see State v. Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162 (1993).

{¶14} In this case, if Officer Butler's search of the Lincoln was a valid *Terry* search for weapons, then Olagbemiro's fruits-of-the-poisonous-tree argument fails.

*Long* at 1050. The trial court framed the issue as, "whether there was a reasonable, articulable suspicion" related to "officer safety" "justifying a limited *Terry* search" of the "area of the vehicle where [Olagbemiro] was [sitting]?"[1]

{¶15} When answering this question in the affirmative, the trial court cited to the following facts. First, the police had an informant's tip that a man named "Rico" was selling drugs from the residence located at the Riverside Drive address where Olagbemiro had emerged and then had entered a vehicle. Second, Olagbemiro was linked to the name "Rico" by the driver of the vehicle, who had exclaimed in front of Officer Butler, "Jesus, Rico, that's your name!" And finally, Officer Butler had observed Olagbemiro making "furtive" movements with his head—"right to left and then up and down"—in a manner suggesting he was hiding a weapon.

{¶16} Olagbemiro urges this court, when reviewing the validity of the search, to reject the trial court's finding that Officer Butler had been able to see the movement of his head through the tinted rear window of the Lincoln. But this factual finding by the trial court is supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. The record contains Officer Butler's unequivocal testimony that when he was parked about 12 to 15 feet behind the Lincoln on a steep grade at about 2:00 p.m. on December 1, he was able to see the silhouette of both occupants' heads. The officer acknowledged that the back window was tinted, but explained that the tinting was within the standard of tinting allowed under the law. Accordingly, he had not cited the driver for illegal window tinting, although he had cited her for failing to signal.

---

[1] The state contended below that the warrantless search was reasonable under any standard, arguing that Officer Butler had "probable cause" to search the Lincoln for drugs. The trial court did not reach this issue, finding the search justified under *Terry*.

{¶17} Olagbemiro's testimony did not sufficiently diminish the credibility of Officer Butler's testimony. Olagbemiro testified that you could not see through the tinted rear window, and offered into evidence two photographs depicting a view of the Lincoln straight on from behind. While these photographs do not show the silhouette of any occupants, Olagbemiro did not testify that there were any occupants of the Lincoln at the time the photograph was taken. Additionally, Olagbemiro did not establish that he had accurately captured Officer Butler's perspective by taking the photograph at the same time of day and at the same location of the traffic stop, which occurred on hill.

{¶18} In light of this record, we defer to the trial court's finding that Officer Butler had observed Olagbemiro's silhouette as it moved inside the Lincoln, even though the rear window of the vehicle was tinted.

{¶19} Next, we address Olagbemiro's concern that the vague movements of the passenger observed by Officer Butler were not sufficient to trigger suspicion because the movements were consistent with innocent behavior. The trial court characterized this movement inside the vehicle as "furtive." A furtive gesture can include a situation where the police see a person in a vehicle "popping up and then ducking down or leaning forward," because this movement may suggest a person's attempt to quickly conceal an unseen weapon from police view. *Bobo*, 37 Ohio St.3d at 179, 524 N.E.2d 489; *see State v. Allen*, 2d Dist. Montgomery No. 23738, 2010-Ohio-3336, ¶ 31.

{¶20} Generally, furtive movements are merely a factor which may contribute to an officer's reasonable suspicion that a suspect might have immediate access to weapons during a valid stop. *See Bobo* at 180; *State v. Caldwell*, 5th Dist. Richland No. 2011-CA-0024, 2011-Ohio-5429, ¶ 43-51. Those facts must be

substantial enough to reasonably support a conclusion that the movement is furtive—that it can be characterized as an attempt to conceal a weapon from police view, and not just normal and innocent behavior. *See State v. Bird*, 49 Ohio App.3d 156, 157-158, 551 N.E.2d 622 (11th Dist.1988).

{¶21} Ultimately, a court evaluates an officer's reasonable suspicion under the totality of the circumstances and considers those circumstances through the eyes of a reasonable and prudent police officer. *See Bobo* at paragraph two of the syllabus; *Smith*, 1st Dist. Hamilton No. C-110727, 2013-Ohio-2208, at ¶ 11. The officer must articulate sufficient facts that would lead a reasonable person to conclude a suspect may be armed and dangerous, but this objective standard does not require the officer to testify to actual fear of a suspect. *Evans*, 67 Ohio St.3d at 413, 618 N.E.2d 162; *Caldwell* at ¶ 48.

{¶22} Finally, "[a] court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Andrews*, 57 Ohio St.3d 86, 88, 565 N.E.2d 1271 (1991). Due to the nature of narcotics trafficking, it is reasonable to conclude that a suspected narcotics dealer may be armed and dangerous. *Evans* at 413.

{¶23} Here, Officer Butler, a veteran officer, testified that when he effectuated the stop of the Lincoln, he noticed "some movement from the passenger, specifically the silhouette of a head moving side to side and up and down" that suggested the passenger may have been "trying to conceal some weapon or contraband." Consistent with this perceived threat, Officer Butler waited for cover before approaching the vehicle.

{¶24} Officer Butler's subsequent interaction with the occupants in the Lincoln added to the perceived threat and further corroborated the tip from the

9

confidential informant. The passenger was identified as "Rico," the individual who was the subject of the investigation for heroin trafficking. This fact increased the likelihood that the passenger would have been armed when he entered the Lincoln, that he had concealed the weapon inside the vehicle at the time of the traffic stop, and that he would have access to that concealed weapon upon the conclusion of the traffic stop when he reentered the vehicle, as the pat down search had revealed no weapons. Further, Officer Butler testified that the passenger did not produce any identification card, creating the inference that the observed head movement was not caused by a retrieval of such identification.

{¶25} Our evaluation of these facts and the rational inferences from those facts leads us to conclude that the totality of the circumstances known to Officer Butler at the time of the search provided reasonable suspicion to support the limited protective search of the passenger compartment of the Lincoln during the valid traffic stop. We hold, therefore, that the trial court properly denied Olagbemiro's motion to suppress the fruits of the protective search of the Lincoln, including the drugs later found on Olagbemiro's person. Consequently, we overrule the assignment of error.

## Conclusion

{¶26} Accordingly, the trial court's judgments are affirmed.

Judgments affirmed.

**ZAYAS** and **DETERS, JJ.**, concur.

Please note:

The court has recorded its own entry this date.