[Cite as *State v. Jordan*, 2020-Ohio-689.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180559 |
| | | C-180560 |
| Plaintiff-Appellee, | : | TRIAL NOS.  B-1702130 |
| | | B-1607185A |
| vs. | : | |
| LEANDRE JORDAN, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  February 28, 2020


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Melynda J. Machol,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}   Defendant-appellant LeAndre Jordan appeals his convictions for aggravated trafficking in drugs.  In two assignments of error, he argues that the trial court erred in denying his motion to suppress, and in failing to document a three-year license suspension in its sentencing entry.  For the following reasons, Jordan's first assignment of error is overruled and his second assignment of error is sustained.

### *Factual Background*

{¶2}   The majority of the relevant facts revolve around a burglary that Jordan was accused of committing, but the cases before us relate to drugs and other evidence seized from Jordan's residence after police executed a search warrant looking for evidence related to the burglary.

{¶3}   Shortly after 4:30 p.m. on December 12, 2016, James and Emiko Locke returned home to find that their home had been burglarized.  The only item missing was a safe containing $40,000 in cash.  Cincinnati Police Detective Mark Longworth investigated the burglary.  Longworth determined that the burglar's entry and exit point was a broken window in the back of the house. Since there was only one entry and exit point, and no valuables missing besides the safe, Longworth determined that it was likely that the burglar knew what he was looking for when he entered the house.

{¶4}   Longworth testified that the burglary was believed to have occurred between 4:15 p.m. and 4:30 p.m. when no one was at home.  Longworth testified that the Lockes informed him that only two other people knew what was inside the safe and where it was hidden: their son Michael and their godson Demarco Daniels.

Michael had been "kicked out" of the house by his parents, and had "just recently come back around." The Lockes informed Longworth that Michael had called them on the phone a couple of times around the time of the burglary, trying to determine whether they were home. Longworth testified that the Lockes were "very suspicious" of Michael's attempts to determine if they were home. With Michael's permission, Longworth looked at Michael's phone call history and discovered that he had called his parents at 4:23 p.m. and 4:29 p.m.

{¶5} Longworth testified the Lockes told him that after they discovered the burglary, Michael came to the house and was "kind of fishing around for information about what had happened, what they knew." A neighbor came over and told the Lockes that he had seen a suspicious crème-colored Chrysler 300 parked near their house around the time of the burglary. When the neighbor told the Lockes about the Chrysler, Michael became upset and "yelled at [the neighbor] and told him to get out." Longworth testified that the car's movements, as described by the neighbor, raised his suspicion that it may have been involved in the burglary. Longworth testified that the Lockes informed him that as soon as the neighbor described the car, they knew that it was "Dre's" car. They told Longworth that Michael had been hanging out with Dre lately, and that they thought Dre was trouble.

{¶6} Dre is LeAndre Jordan. The Lockes informed Longworth that Jordan worked at a barbershop on Warsaw Avenue by a Kroger store. Longworth located a crème-colored Chrysler in the parking lot of the Kroger, by the barbershop. Longworth described the car as "unique," and discovered that the car was registered to Jordan's mother. He took photographs of the car and confirmed with Michael that it was Jordan's car. Michael also confirmed that he was friends with Jordan, and

3

that he had been with Jordan the day of the burglary. Upon further review of Michael's phone call history, Longworth discovered that on the day of the burglary Michael had called Jordan at 4:36 p.m. and 4:49 p.m., and Jordan had called Michael at 5:03 p.m.

{¶7} Longworth placed Jordan under surveillance. Jordan parked the Chrysler in the same spot every day—in the Kroger parking lot across from the barbershop. Police watched him come and go from the car and barbershop for several days. Eight days after the burglary, Longworth arrested Jordan, without a warrant, as Jordan walked to a different car he was driving that day, a black Lexus. Following the arrest, police searched Jordan and discovered keys to his residence. Longworth obtained a search warrant for the residence. When officers searched the residence, they found $2,907, heroin, cocaine, a scale, and an inoperable pistol.

### Motion to Suppress

{¶8} In his first assignment of error, Jordan argues that the trial court erred in denying his motion to suppress the evidence seized from his apartment. Specifically, Jordan argues that his arrest was illegal because it was not based on probable cause and was made without a warrant. Jordan contends that all evidence seized from his residence must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶9} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Olagbemiro,* 1st Dist. Hamilton Nos. C-170451 and C-170452, 2018-Ohio-3540, ¶ 9. "We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts." *Id.*

4

{¶10} "A warrantless seizure is per se unreasonable unless it falls within one of the recognized exceptions to the warrant requirement." *State v. Pies,* 140 Ohio App.3d 535, 539, 748 N.E.2d 146 (1st Dist.2000). One such exception is a warrantless arrest in a public place, which does not violate the Fourth Amendment if the police officer had probable cause to believe that the person committed or was committing a felony. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson* 423 U.S. 411, 427, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); R.C. 2935.04.

{¶11} The test for establishing probable cause to arrest without a warrant is "whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense." *State v. Deters*, 128 Ohio App.3d 329, 333, 714 N.E.2d 972 (1st Dist.1998). "Probable cause is a lesser standard of proof than that required for a conviction, which is proof beyond a reasonable doubt. Probable cause only requires the existence of circumstances that warrant suspicion." *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 26. It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Thorton*, 1st Dist. Hamilton Nos. C-170586 and C-170587, 2018-Ohio-2960, ¶ 21, quoting *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. Probable cause is a "practical, nontechnical concept." *Gates* at 287. It does not require officers to rule out an innocent explanation for suspicious facts. *Thorton* at ¶ 22.

{¶12} Jordan first argues that the trial court erred by relying on facts learned by police post-arrest in finding that probable cause existed for the arrest. When a

court relies on post-arrest evidence in its denial of a motion to suppress, this court must disregard that evidence to determine if the remaining evidence gave the officer probable cause to arrest. *See City of Washington Court House v. Wagner,* 12th Dist. Fayette No. CA91-01-001, 1991 WL 149551, *2 (Aug. 5, 1991); *State v. Johnson*, 11th Dist. Lake No. 2003-L-210, 2005-Ohio-2077, ¶ 13-16.

{¶13} When the trial court overruled Jordan's motion to suppress, it based its decision, in part, on the fact that "Mr. Jordan himself acknowledge[d] the fact that he drove both cars." Jordan did admit that the Chrysler was his mother's and that he drove it from time to time, but those admissions were made during the post-arrest interview, and so were not known to police at the time of the arrest. Therefore, it was error for the court to rely on Jordan's admissions when ruling on the motion to suppress. The state concedes this error, but argues that other evidence established probable cause to arrest Jordan even without Jordan's post-arrest statements.

{¶14} Jordan argues that after discounting the post-arrest admissions, the remaining evidence relied upon by the court in overruling the motion to suppress was subjective and unreliable. He points to the lack of certain evidence, such as the license plate number of the Chrysler. But, the test is not about what evidence was missing; rather it is about what evidence was before the court.

{¶15} Longworth is a 19-year veteran of the police department. He testified that he determined there was probable cause to arrest Jordan based on "the phone records, the interview with Michael Locke, the interview with the family, the interview with the neighbor, the observations that I made that corroborated those things."

{¶16} It is clear that the Lockes did not like Jordan and thought he was trouble, but their suspicions of Jordan were not based solely on their dislike of him or pure speculation. Rather, once the neighbor told them he had seen a suspicious crème-colored Chrysler near the house around the time of the burglary, they told Longworth that Jordan drove that kind of car, and that Michael (who they suspected was involved in the burglary based on his knowledge of the safe and the phone calls) had been hanging out with Jordan recently.

{¶17} Although the court's consideration of Jordan's post-arrest admissions was error, once we excise the admissions, we are left with evidence sufficient to cause a prudent person to believe that a burglary had been committed, and that Jordan was involved in the burglary.

{¶18} Next, Jordan argues that police failed to obtain an arrest warrant, and that no exigency existed to excuse that requirement. Jordan cites to a Second District case, *State v. VanNoy*, 188 Ohio App.3d 89, 2010-Ohio-2845, 934 N.E.2d 413, ¶ 23 (2d Dist.), for the proposition that Longworth should have obtained an arrest warrant even though he made the arrest in a public place and with probable cause. In *VanNoy,* the court held that "in order for an officer to lawfully perform a warrantless arrest in a public place, the arrest must not only be supported by probable cause, it must also be shown that obtaining an arrest warrant beforehand was impracticable under the circumstances, i.e., that exigent circumstances exist." *Id.*, citing *State v. Heston,* 29 Ohio St.2d 152, 280 N.E.2d 376 (1972), paragraph two of the syllabus.

{¶19} However, the proposition in *VanNoy* and *Heston* is at odds with Ohio Supreme Court precedent. "A warrantless arrest that is based upon probable cause

7

and occurs in a public place does not violate the Fourth Amendment." *Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 66, citing *Watson,* 423 U.S. at 427, 96 S.Ct. 820, 46 L.Ed.2d 598.

{¶20} As stated by *State v. Taylor*, 10th Dist. Franklin No. 18AP-7, 2019-Ohio-2018, ¶ 14, the Second District's position in *VanNoy* is a minority position. There is even dispute within the Second District as to *VanNoy's* viability. *See State v. Armstead*, 2d Dist. Montgomery No. 26640, 2015-Ohio-5010, ¶ 40 (Welbaum, J., dissenting) (explaining that *Heston* has been discredited by *Watson* and *Brown*, and exigent circumstances or an undue delay requirement cannot be imposed on warrantless arrests made with probable cause).

{¶21} This court follows the majority approach. *See State v. Evans*, 1st Dist. Hamilton No. C-080129, 2009-Ohio-241, ¶ 13, citing *Watson* at 427 ("a warrantless arrest of a person is proper if it is supported by probable cause"). Therefore, the state was not required to show that exigent circumstances existed when it arrested Jordan. Jordan's arrest occurred in a public place and Longworth had probable cause to believe that Jordan had committed a felony. Because Jordan's arrest did not violate the Fourth Amendment, the trial court did not err in denying the motion to suppress. Jordan's first assignment of error is overruled.

### License Suspension

{¶22} In Jordan's second assignment of error, he argues that the trial court erred where it announced a three-year license suspension at the sentencing hearing, but imposed a five-year license suspension in its sentencing entry. The state concedes the error.

**{¶23}** The five-year license suspension in the judgment entry is clearly a clerical error, as the record shows that the trial court imposed a three-year license suspension at the sentencing hearing. We sustain Jordan's second assignment of error, and remand this cause to the trial court to make an entry nunc pro tunc correcting the clerical error in the sentencing entry so that the entry reflects a three-year license suspension. *See* Crim.R. 36; *State v. Cooper,* 1st Dist. Hamilton No. C-180401, 2019-Ohio-2813, ¶ 1.

### *Conclusion*

**{¶24}** We sustain Jordan's second assignment of error and remand this cause for a nunc pro tunc entry correcting the license-suspension portion of his sentence. We overrule Jordan's first assignment of error, and the judgment of the trial court is affirmed.

Judgment affirmed and cause remanded.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:
 The court has recorded its own entry on the date of the release of this opinion.