[Cite as *State v. Hampton*, 2022-Ohio-1380.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210423 |
| | | TRIAL NO. B-2101597 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| DEARRIUS HAMPTON, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 27, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*The Law Office of Wendy R. Calaway, Co., LPA, Wendy R. Calaway,* and *The Lewis Law Firm, Inc. LPA, Cornelius "Carl" Lewis,* for Defendant-Appellee.

**BERGERON, Judge.**

{¶1} A traffic stop premised on tailgating ended with the indictment of defendant-appellee Dearrius Hampton on multiple drug-related felonies. Mr. Hampton moved to suppress the evidence against him, arguing that the stop ran afoul of his constitutional rights. The trial court agreed and granted his motion to suppress, finding that the officer lacked probable cause or reasonable suspicion to effectuate the traffic stop. The state now appeals, but because competent and credible evidence supports the trial court's determination and the court correctly applied the governing legal standard, we affirm its judgment.

I.

{¶2} Mr. Hampton first caught the eye of a police officer who was part of the Regional Narcotics Unit task force while driving a silver Dodge Charger on southbound I-75 allegedly at a rate of speed slower than the surrounding traffic. As Mr. Hampton passed by him, the officer noticed the car's heavily-tinted windows and Tennessee license plates. Based on those initial observations, and knowing that the out-of-state plates prevented him from stopping Mr. Hampton for a window-tint violation, the officer pulled out and followed the vehicle to scrutinize his driving habits.

{¶3} By the time the officer caught up to Mr. Hampton, the Charger was purportedly tailgating the vehicle in front of it. Mr. Hampton changed lanes and began similarly following a second car at a distance that the officer believed unsafe for the conditions. According to the investigative report, at this point, the officer queried the Tennessee license plate, ascertained that the vehicle was a rental, and decided to stop

Mr. Hampton for tailgating because rental companies do not (in his experience) tint their car windows and he hoped to find evidence of drug trafficking.

{¶4} After stopping Mr. Hampton, the officer deployed the drug-sniffing canine that was riding along with the task force and the dog alerted to the presence of a drug odor emanating from the Dodge Charger. The task force officers found a small bag of drugs in the center console left cup holder and three bags of drugs on the rear passenger floor board inside a microwaveable popcorn box. After his arrest, Mr. Hampton lodged objections to the stop, claiming that because he was legally operating the car, the officer lacked any justification to initiate the traffic stop, contravening his Fourth Amendment rights. The trial court agreed, suppressing the evidence as "fruits of the poisonous tree," and the state now appeals.

II.

{¶5} Our review of the trial court's decision granting the motion to suppress presents a mixed question of law and fact. *State v. Winfrey*, 1st Dist. Hamilton No. C-070490, 2008-Ohio-3160, ¶ 19. "In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses." *Id.* And while "we must accept the trial court's findings of fact if they are supported by competent and credible evidence," we will review de novo the trial court's application of the law to those facts. *Id.*; *State v. Jordan*, 2020-Ohio-689, 145 N.E.3d 357, ¶ 9 (1st Dist.) ("We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts.").

{¶6} Traffic stops initiated by law enforcement officers constitute seizures under the Fourth Amendment, thus "any traffic stop must comply with the Fourth

3

Amendment's reasonableness requirement." *State v. Brown*, 1st Dist. Hamilton No. C-190186, 2020-Ohio-896, ¶ 8, citing *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Ohio law recognizes two types of constitutionally permissible traffic stops, and "[t]he applicable standard depends on the type of traffic stop." *State v. Johnson*, 1st Dist. Hamilton Nos. C-010621 and C-010622, 2002-Ohio-2884, ¶ 5. The first type of traffic stop, an investigative stop, occurs when a police officer lacks probable cause to stop a defendant based on the lack of a first-hand observation of a traffic violation. Even absent probable cause, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, 23 ("[W]e have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion * * * which is all the officer needs to justify a stop.").

{¶7} Seeking to avail itself of this option, the state asserts that, at the very least, the officer's suspicion that Mr. Hampton violated an Ohio traffic law was reasonable and justified an investigative stop of the car. But the state failed to develop that argument on appeal or direct us to specific and articulable facts giving rise to suspected criminal activity that required further investigation by the officer, particularly given that he pulled the vehicle over for allegedly driving too close to another car. As a result, the driving offense (if any) was completed by the time that he stopped the car, leaving nothing to investigate. *See Johnson* at ¶ 6 (limiting this type of stop to situations where the officer "does not necessarily witness a specific traffic violation"). On these facts, therefore, reasonable suspicion cannot support the stop.

4

{¶8} We accordingly confine our analysis to the typical noninvestigatory stop that officers perform after witnessing specific traffic violations, premised on probable cause. This second type of constitutionally-permissible traffic stop is reasonable under the Fourth Amendment when supported by probable cause " 'even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.' " *State v. Mosley*, 1st Dist. Hamilton No. C-200448, 2021-Ohio-3472, ¶ 8, quoting *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *State v. Slaughter*, 1st Dist. Hamilton Nos. C-170110, C-170111 and C-170112, 2018-Ohio-105, ¶ 10 ("A police officer's decision to stop an automobile is reasonable where the officer has probable cause to believe that a traffic violation has occurred. Probable cause is a complete justification for a traffic stop.").

{¶9} According to the state, the officer had probable cause to stop Mr. Hampton because he witnessed Mr. Hampton twice violating R.C. 4511.34 by following the vehicles in front of him too closely. In assessing the officer's belief that Mr. Hampton violated Ohio law, the trial court should examine the circumstances and historical facts "from the standpoint of an objectively reasonable police officer. * * * Determination of probable cause that a traffic offense has been committed, 'like all probable cause determinations, is fact-dependent and will turn on what the officer knew at the time he made the stop.' " (Emphasis deleted.) *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 14, quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993). "Thus, the question whether a traffic stop violates the Fourth Amendment to the United States Constitution requires

5

an objective assessment of a police officer's actions in light of the facts and circumstances." *Id.*

{¶10} Turning to Mr. Hampton's alleged violation, R.C. 4511.34 renders it unlawful for the operator of a motor vehicle to follow another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway." "Although R.C. 4511.34(A) does not provide a specific standard for determining when a motorist is following another vehicle more closely than is reasonable and prudent, numerous courts have concluded that a motorist's failure to follow another vehicle at a distance greater than one car length for every ten miles per hour the motorist's vehicle is traveling may, in some circumstances, indicate that the motorist is in violation of R.C. 4511.34." *State v. Holmes*, 2019-Ohio-2485, 139 N.E.3d 574, ¶ 29 (3d Dist.). The officer testified that based on the cars around them, he believed Mr. Hampton was traveling the posted speed of 55 m.p.h. and following the cars in front of him at a distance of one to one and a half car lengths.

{¶11} During the hearing on the motion to suppress, Mr. Hampton's counsel presented video evidence obtained from the Ohio Department of Transportation. The videos captured only Mr. Hampton's second alleged violation of R.C. 4511.34, though the officer confirmed the first violation was substantially the same, leaving the trial court with no reason to analyze it differently. The video depicted the Dodge Charger traveling in the southbound center lane of I-75 first near the Shepherd Lane exit, and then again closer to the Lockland split. The trial court concluded that Mr. Hampton appeared to be at least two car lengths behind the vehicle in front of him. In the state's view, and relying on the officer's estimated speed of 55 m.p.h., probable cause existed

6

that Mr. Hampton was in violation of the statute unless five and a half car lengths of distance separated him and the cars in front of him at all times. The state faults the trial court for substituting its own judgment in place of the officer about what constitutes a safe driving distance.

{¶12} But this fails to take into account the legal standard under R.C. 4511.34. As the Sixth District recently recognized, "the one car length per ten miles an hour measurement is not a standard but is one means of estimating what is reasonable and prudent under the circumstances." *State v. Bui*, 6th Dist. Lucas No. L-19-1028, 2021-Ohio-362, ¶ 32. "To determine whether an officer possessed probable cause or reasonable suspicion to stop a vehicle, the court must examine the totality of the circumstances." *Brown*, 1st Dist. Hamilton No. C-190186, 2020-Ohio-896, at ¶ 11. Establishing probable cause for a violation of R.C. 4511.34 required the state to prove not that Mr. Hampton followed the cars in front of him at a distance of less than five and a half car lengths, but that he followed more closely than was reasonable and prudent in light of the speed of the vehicles, the flow of traffic, and the condition of the highway. *See State v. Woods*, 2018-Ohio-3379, 117 N.E.3d 1017, ¶ 18 (5th Dist.).

{¶13} Contrary to the state's argument, the trial court did not reject extant Ohio caselaw on this topic, but instead faithfully applied it. The trial court appropriately evaluated the distance Mr. Hampton was following in conjunction with the other factors listed in R.C. 4511.34, and based on the totality of the circumstances (not just the distance between cars), it found that no probable cause existed for a violation of R.C. 4511.34. Its review of the video evidence and the testimony of the officer established that the roads were dry, it was midday and sunny, good visibility existed with a moderate flow of traffic, the speed limit was 55 m.p.h., and there was

7

equidistance between the cars in the footage. Indeed, the video depicts several cars following other cars as close (or more closely) than Mr. Hampton. The trial court weighed the statutory factors against the spacing of Mr. Hampton's car and judged that an objectively reasonable officer would not have probable cause pursuant to R.C. 4511.34 to think that Mr. Hampton was traveling "more closely than is reasonable and prudent." *See* R.C. 4511.34. This strikes us as the proper approach and one that conforms to other Ohio appellate decisions.

{¶14} Bolstering the trial court's conclusion, the Sixth District recently reversed a trial court after it found probable cause for a violation of R.C. 4511.34 based solely on the one car length per ten m.p.h. standard. On a similar fact pattern, the Sixth District viewed the video evidence in *State v. Bui* and concluded that despite the defendant following at less than one car length per ten m.p.h. behind, "[n]owhere in the video does it show appellant's vehicle proceeding on the roadway in an unreasonable or unsafe manner." *Bui* at ¶ 41. In looking only to the distance followed, the trial court "did not apply the correct standard in analyzing the validity of the traffic stop, and the court's findings [were] not based on the totality of the circumstances or supported by competent, credible evidence." *Bui* at ¶ 42. The Sixth District's reversal is all the more notable in light of the fact that we must generally give deference to the trial court's probable cause assessment. *See State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 8, citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. The trial court here essentially proceeded in the manner envisioned in *Bui* and actually evaluated the totality of the circumstances, providing us with a stronger record on which to affirm its judgment.

8

And we have no hesitation in deferring to its factual findings based on the record at hand.

{¶15}  The trial court's analysis comports with the language of R.C. 4511.34. Accordingly, competent and credible evidence was presented upon which the trier of fact could find that Mr. Hampton was not following more closely than is reasonable and prudent.  We agree with the trial court's determination that probable cause was wanting, and that suppression constitutes the appropriate remedy.

\*       \*       \*

{¶16}  In light of the foregoing analysis, we overrule the state's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

9